IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD P. WELLS,

    Plaintiff,

v.

CALIFORNIA PHYSICIANS' SERVICE,
dba BLUE SHIELD OF CALIFORNIA,

    Defendant.
_____/

No. C 05-01229 CRB

**MEMORANDUM AND ORDER**

    This lawsuit arises out of the alleged six-week delay by Defendant California Physicians' Service, dba Blue Shield ("Blue Shield"), in approving cancer treatment for Plaintiff's wife, Mrs. Wells. Plaintiff alleges that when Blue Shield finally approved the treatment, the doctors determined that the cancer had spread too far to administer the treatment and thus, as a result of the delay, his wife died sooner than she would have otherwise. Plaintiff seeks injunctive relief under ERISA sections 502(a)(2) and 502(a)(3), to ensure that a similar incident will not happen to himself, his sons, or other members of the health plan ("Plan Members") in the future.

    Now pending before the Court is Defendant's motion for summary judgment on the ground that under the recent Ninth Circuit case of <u>Glanton v. AdvancePCS Inc.</u>, 465 F.3d 1123 (9th Cir. 2006), Plaintiff lacks standing to maintain this action. After carefully reviewing the papers filed by the parties, and the cases that both parties emphasized at oral argument, the Court DENIES the motion.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff Richard Wells lives in Georgia and is employed by a California company. He and his family, including his two minor sons, have Blue Shield health insurance ("the Plan") through his employer.

Plaintiff's wife, Mrs. Wells, was diagnosed with breast cancer in 1998. By May 2000, the cancer had spread to her liver. From May 2000 through June 2002, Mrs. Wells was treated at the MD Anderson Cancer Center in Houston, Texas with a course of treatment called Taxol Protocol. Blue Shield approved and paid nearly $90,000 for the treatment. Mrs. Wells responded well to the treatment, which appeared to destroy the tumors in her liver and keep the cancer from spreading.

After Christmas 2002, Mrs. Wells learned that new tumors had been detected in her liver. Plaintiff immediately contacted MD Anderson to arrange for more Taxol Protocol treatments. MD Anderson informed Plaintiff that the doctor who had cared for Mrs. Wells was retiring and that MD Anderson was no longer providing the treatment. MD Anderson referred Plaintiff to two other centers, one in Illinois and one in California, that administer the Taxol Protocol.

On or about January 6, 2003, Plaintiff attempted to arrange treatment for Mrs. Wells at the center in Illinois, the Cancer Treatment Centers of America ("Cancer Center"). However, on or about January 9, 2003, the Cancer Center informed him that Blue Shield had refused to authorize Mrs. Well's treatment on the ground that the Taxol Protocol was "investigational" and not covered under the Plan. Plaintiff immediately contacted Blue Shield by telephone and a representative orally confirmed the denial, but he never received a written notification or explanation of the denial decision. Plaintiff then made a series of telephone calls to Blue Shield from January 6 through January 28, during which he pointed out that Blue Shield had previously paid for the treatment, and emphasized that the situation was life threatening.

On January 28, the Plan's insurance broker contacted Blue Shield on Mrs. Well's behalf and related all the same information that Plaintiff had previously shared. That same

1 day Blue Shield sent Plaintiff a letter stating that it would respond to Plaintiff's "grievance"
2 within 30 calendar days. The Blue Shield Grievance Coordinator requested an "expedited
3 review," but Blue Shield determined the case did not meet the requirements for expedited
4 review, and so instead processed it as a standard grievance.

Blue Shield subsequently contacted Plaintiff and asked him to provide Mrs. Wells'
medical records. On February 10, a "Blue Shield Physician Adviser" determined that the
Taxol Protocol was investigational and not covered. Blue Shield then finally spoke with
Mrs. Wells' physician from MD Anderson, and, on February 22, Plaintiff received written
confirmation that Blue Shield had approved the treatment.

On February 25, 2003, Mrs. Wells was admitted to MD Anderson for diagnostic tests
which revealed the cancer had advanced to a point that further treatment would be futile.
Mrs. Wells died one month later.

## PROCEDURAL BACKGROUND

Plaintiff initiated this ERISA action on his own behalf, as guardian of his two minor children, and as the administrator of his wife's estate. Plaintiff initially sought injunctive relief, compensatory damages, and other equitable relief against Defendant Blue Shield. In October 2005, this Court dismissed Plaintiff's claims for compensatory damages because they are not recoverable under ERISA. See Order on Mot. to Dismiss, Oct. 11, 2005; see also Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1008-09 (9th Cir. 1998); McLeod v. Oregon Lithoprint Inc., 102 F.3d 376, 378 (9th Cir. 1996). The Court also dismissed the claims for other equitable relief, finding that they likewise sought compensatory damages. See Order on Mot. to Dismiss, Oct. 11, 2005. The Court, however, denied dismissal of the claim seeking injunctive relief on the ground that under the language of the statute it appears that Plaintiff has standing. See id.

As a result, all that remains in this case is the claim for injunctive relief. Plaintiff seeks injunctive relief under sections 502(a)(2) and 502(a)(3) of ERISA, and asserts that his intent is to prevent what happened to Mrs. Wells from happening to other Plan Participants. Specifically, Plaintiff seeks to (1) bar Defendant from denying the Taxol Protocol treatment

3

1  to any Plan Member on the ground that it is "experimental" when the treatment is prescribed
2  by a Plan Provider; (2) bar Defendant from discontinuing or failing to approve any treatment
3  that it has already approved without giving the beneficiary timely written notice, including
4  certain specific information; (3) require Defendant to implement and maintain a procedure
5  which assures the retention and production of records of communications between Plan
6  Members or Providers and Defendant regarding the denial or previously approved treatment;
7  (4) require Defendant to implement and maintain a procedure to assure that urgent care
8  claims will be processed expeditiously; and (5) require Defendant to maintain auditable
9  records to allow measurement of compliance with these rules.

10  During a Case Management Conference on October 20, 2006, Defendant asserted that
11  the recently-decided Ninth Circuit case of Glanton v. Advance PCS Inc., 465 F.3d 1123 (9th
12  Cir. 2006), was dispositive as to whether Plaintiff has standing to maintain this action. The
13  Court continued all pending dates to permit Defendant to file a motion for summary
14  judgment based on Glanton, and this is the motion now before the Court.

## DISCUSSION

16  To bring an ERISA lawsuit, a plaintiff must not only have standing under the statute,
17  but must also meet the standing requirements of Article III of the U.S. Constitution. See
18  Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 455 (3d Cir. 2003) (citing Warth v.
19  Seldin, 422 U.S. 490, 491 (1975)); Cent. States SE & SW Areas Health & Welfare Fund v.
20  Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 199 (2d Cir. 2005); Bank America
21  Pension Plan v. McMath, No. C 97-3242 CRB, 2001 WL 263290, at *9 (N.D. Cal. March 5,
22  2001). To meet the Article III standing requirements, a party must demonstrate: (1) an injury
23  in fact, or harm that is actual or imminent; (2) causation, or a fairly traceable connection
24  between the alleged injury in fact and the alleged conduct of the defendant; and (3)
25  redressability, or a substantial likelihood that the requested relief will remedy the alleged
26  injury in fact. See Vt. Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 771
27  (2000); Bank America Pension Plan, 2001 WL 263290, at *8.

With respect to claims for injunctive relief, it is well-established that "'[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" Horvath, 333 F.3d at 456 (quoting Warth, 422 U.S. at 499-500); see also Ziegler v. Conn. Gen. Life Ins. Co., 916 F.2d 548, 551 (9th Cir. 1990) (finding that "Congress intended to make fiduciaries culpable for certain ERISA violations even in the absence of actual injury to a plan or participant."). Accordingly, courts hold that when plan participants seek injunctive relief for violations of ERISA's disclosure or fiduciary requirements, they can demonstrate Article III standing by showing a violation of ERISA and need not prove actual injury. See Horvath, 333 F.3d at 456 (finding that plaintiff "need not demonstrate actual harm in order to have standing to seek injunctive relief requiring that [defendant] satisfy its statutorily-created disclosure or fiduciary responsibilities.") (citing, among other cases, Fin. Inst. Ret. Fund v. Office of Thrift Supervision, 964 F.2d 142, 149 (2d Cir. 1992) (noting that "ERISA's goal of deterring fiduciary misdeeds" supports a "broad view of participant standing under ERISA," and holding that a violation of § 404 satisfies the injury requirement of Article III)); Cent. States, 433 F.3d at 199-200 (quoting Horvath); see also Shaver v. Operating Eng'rs Local 428 Pension Trust, 332 F.3d 1198, 1203 (9th Cir. 2003) (in context of motion to dismiss for failure to state a claim, holding that no showing of individual harm is necessary where plaintiffs seek purely equitable relief to enjoin future misconduct).

Although some courts have held that an ERISA plaintiff must allege individual loss or injury to have Article III standing, they require such a showing only where plaintiffs seek monetary relief. See Horvath, 333 F.3d at 456 (finding that plaintiff's requests for restitution and disgorgement were individual in nature and therefore required plaintiff to demonstrate individual loss to satisfy Article III standing) (citation omitted); Cent. States, 433 F.3d at 200 (quoting Horvath); see also Bollig v. Christian Comm. Homes & Servs., Inc., No. 02-C-532-C, 2003 WL 23200362, at *2 (W.D. Wis. July 10, 2003) (finding that although a plaintiff seeking injunctive relief may have Article III standing without a showing of actual harm, requests for monetary damages require a plaintiff to demonstrate individual loss).

5

Indeed, in Horvath and Central States the courts explicitly distinguished between ERISA claims for monetary relief, which require a showing of individual harm, and claims for injunctive relief, which do not. Horvath, 333 F.3d at 456; Cent. States, 433 F.3d at 200. As the Ninth Circuit explained in the context of a motion to dismiss for failure to state a claim:

> Requiring a showing of loss in such a case would be to say that the fiduciaries are free to ignore their duties so long as they do no tangible harm, and that the beneficiaries are powerless to rein in the fiduciaries' imprudent behavior until some actual damage has been done. This result is not supported by the language of ERISA, the common law, or common sense.

Shaver, 332 F.3d at 1203.

In Glanton v. Advance PCS Inc., 465 F.3d 1123 (9th Cir. 2006), plaintiffs alleged monetary losses to an ERISA plan and its participants. Id. at 1124-25. Specifically, plaintiffs were participants in drug prescription plans who sued a pharmacy benefits management company and claimed that in addition to earning fees from the plan, the company secretly retained the difference between what it charged the plans for the drugs and what it paid suppliers. Id. at 1124. Plaintiffs asserted that they were harmed by high co-payments, and that a favorable resolution of the case would lead to a decrease in drug costs to the plans, which might in turn reduce their co-payments. Id. at 1125.

The court held that in addition to showing they were authorized to bring a suit under ERISA, plaintiffs had to demonstrate standing under Article III. Id. at 1124. The court found that plaintiffs lacked standing because they could not demonstrate a redressable injury because, even if plaintiffs' suit was successful, the relief sought would not require the plans to decrease the co-payments, nor would an award to the plans for past overpayments inure to the benefit of participants. Id.

Defendant argues that Glanton requires all ERISA plaintiffs to demonstrate redressable injury to satisfy the Article III standing requirements, even when the plaintiffs seek injunctive relief. Glanton, however, does not support such a sweeping change in the established case law; instead, Glanton fits squarely within the prior case law addressing Article III standing in ERISA cases.

1    First, although <u>Glanton</u> did not distinguish between plaintiffs' claims for monetary
2 and equitable relief, all of the plaintiffs' claims revolved around the alleged monetary loss to
3 the plan.  <u>Glanton</u> is therefore distinguishable from those cases that address claims for
4 injunctive relief that exist wholly apart from claims for monetary relief and find that no
5 showing of redressable injury is required for the injunctive relief claims.  <u>See</u> <u>Hovarth</u>, 333
6 F.3d at 455-56 (plaintiff sought an injunction barring defendant from omitting information
7 from its disclosures to plan members, in addition to seeking restitution and disgorgement);
8 <u>Cent. States</u>, 433 F.3d at 199-200 (plaintiffs sought injunctive relief requiring defendant to
9 satisfy its disclosure and fiduciary duty responsibilities, in addition to claims for restitution
10 or disgorgement).

11    Second, <u>Glanton</u> discusses plaintiffs' allegations of monetary loss, but never even
12 mentions the equitable relief claims.  465 F.3d at 1124-25.  Thus, <u>Glanton</u> cannot be read as
13 broadly holding that plaintiffs must show individual injury in all ERISA cases, including
14 those in which a plaintiff seeks only injunctive relief, or injunctive relief wholly unrelated to
15 a monetary loss.

16    Third, <u>Glanton</u> cites <u>Horvath</u> and <u>Central States</u> for having "reached the same
17 conclusion."  <u>Id.</u> at 1125.  Because <u>Horvath</u> and <u>Central States</u> require a showing of
18 individual injury for claims of monetary loss while *explicitly* holding that no such
19 requirement exists for claims seeking injunctive relief, it follows that <u>Glanton</u> refers only to
20 claims of monetary loss, and does not broaden or overrule the pre-existing case law.  <u>See</u>
21 <u>Horvath</u>, 333 F.3d at 456;  <u>Cent. States</u>, 433 F.3d at 200.

22    Here, Plaintiff seeks only injunctive relief wholly unrelated to any monetary loss and
23 therefore need not demonstrate that he was individually harmed or suffered a loss.  <u>Horvath</u>,
24 333 F.3d at 456;  <u>Cent. States</u>, 433 F.3d at 200.  Instead, to demonstrate "injury" for purposes
25 of Article III standing Plaintiff need only show that Blue Shield violated one or more
26 provisions under ERISA.  <u>See</u> <u>Horvath</u>, 333 F.3d at 456 (citing <u>Warth</u>, 422 U.S. at 500
27 (1975)).  Plaintiff alleges several violations of ERISA, including that Blue Shield failed to
28 process Mrs. Well's medical claim as one involving "Urgent Care," and that, upon denial of

the claim, it failed to provide timely written notice with specific detailed information, as required by ERISA.  See First Amended Compl. ¶ 46 (alleging violations of various subsections of 29 C.F.R. § 2560.503-1).  Furthermore, Plaintiff has satisfied the other Article III standing requirements because there is a connection between the alleged ERISA violations and the alleged conduct of the defendant, and the requested injunctive relief would redress the alleged violations.

Moreover, it bears emphasis that there is a concrete case or controversy here.  Plaintiff is not a random member of the Plan who decided to sue Defendant for no reason; instead, he is seeking injunctive relief to correct alleged ERISA violations that led, in his view, to the premature death of his wife.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: March 26, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2005\1229\Order re Summary Judgment.wpd