IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD P. WELLS,

    Plaintiff,

v.

CALIFORNIA PHYSICIANS' SERVICE, dba BLUE SHIELD OF CALIFORNIA,

    Defendant.

No. C 05-01229 CRB

**MEMORANDUM AND ORDER**

This lawsuit arises out of the six-week delay by Defendant California Physicians' Service, dba Blue Shield ("Blue Shield"), in approving cancer treatment for Plaintiff's wife, Mrs. Wells. Plaintiff alleges that when Blue Shield finally approved the treatment, the doctors determined that the cancer had spread too far to administer the treatment and thus, as a result of the delay, his wife died sooner than she would have otherwise. Plaintiff seeks injunctive relief under ERISA sections 502(a)(2) and 502(a)(3), to ensure that a similar incident will not happen to himself, his sons, or other members of the health plan ("Plan Members") in the future.

Now pending before the Court is Defendant's motion for summary judgment on the ground that Plaintiff cannot prove that Defendant does not presently comply with ERISA or its implementing regulations. After carefully reviewing the papers filed by the parties, the Court concludes that oral argument is unnecessary and GRANTS the motion.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff Richard Wells lives in Georgia and is employed by a California company. He and his family, including his two minor sons, have Blue Shield health insurance ("the Plan") through his employer.

Plaintiff's wife, Mrs. Wells, was diagnosed with breast cancer in 1998. By May 2000, the cancer had spread to her liver. From May 2000 through June 2002, Mrs. Wells was treated at the MD Anderson Cancer Center in Houston, Texas with a course of treatment called Taxol Protocol. Blue Shield approved and paid nearly $90,000 for the treatment. Mrs. Wells responded well to the treatment, which appeared to destroy the tumors in her liver and keep the cancer from spreading.

After Christmas 2002, Mrs. Wells learned that new tumors had been detected in her liver. Plaintiff immediately contacted MD Anderson to arrange for more Taxol Protocol treatments. MD Anderson informed Plaintiff that the doctor who had cared for Mrs. Wells was retiring and that MD Anderson was no longer providing the treatment. MD Anderson referred Plaintiff to two other centers, one in Illinois and one in California, that administer the Taxol Protocol.

On or about January 6, 2003, Plaintiff attempted to arrange treatment for Mrs. Wells at the center in Illinois, the Cancer Treatment Centers of America ("Cancer Center"). However, on or about January 9, 2003, the Cancer Center informed him that Blue Shield had refused to authorize Mrs. Well's treatment on the ground that the Taxol Protocol was "investigational" and not covered under the Plan. Plaintiff immediately contacted Blue Shield by telephone and a representative orally confirmed the denial, but he never received a written notification or explanation of the denial decision. Plaintiff then made a series of telephone calls to Blue Shield from January 6 through January 28, during which he pointed out that Blue Shield had previously paid for the treatment, and emphasized that the situation was life threatening.

On January 28, the Plan's insurance broker contacted Blue Shield on Mrs. Well's behalf and related all the same information that Plaintiff had previously shared. That same

day Blue Shield sent Plaintiff a letter stating that it would respond to Plaintiff's "grievance" within 30 calendar days. The Blue Shield Grievance Coordinator requested an "expedited review," but Blue Shield determined the case did not meet the requirements for expedited review, and so instead processed it as a standard grievance.

Blue Shield subsequently contacted Plaintiff and asked him to provide Mrs. Wells' medical records. On February 10, a "Blue Shield Physician Adviser" determined that the Taxol Protocol was investigational and not covered. Blue Shield then finally spoke with Mrs. Wells' physician from MD Anderson, and, on February 22, Plaintiff received written confirmation that Blue Shield had approved the treatment.

On February 25, 2003, Mrs. Wells was admitted to MD Anderson for diagnostic tests which revealed the cancer had advanced to a point that further treatment would be futile. Mrs. Wells died one month later.

**PROCEDURAL BACKGROUND**

Plaintiff initiated this ERISA action on his own behalf, as guardian of his two minor children, and as the administrator of his wife's estate. Plaintiff initially sought injunctive relief, compensatory damages, and other equitable relief against Defendant Blue Shield. In October 2005, this Court dismissed Plaintiff's claims for compensatory damages because they are not recoverable under ERISA. See Order on Mot. to Dismiss, Oct. 11, 2005 (Docket no. 35); see also Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1008-09 (9th Cir. 1998); McLeod v. Oregon Lithoprint Inc., 102 F.3d 376, 378 (9th Cir. 1996). The Court also dismissed the claims for other equitable relief, finding that they likewise sought compensatory damages. See Order on Mot. to Dismiss, Oct. 11, 2005. The Court, however, denied dismissal of the claim seeking injunctive relief on the ground that under the language of the statute it appears that Plaintiff has standing. See id. Defendant subsequently moved for summary judgment on the lone claim for equitable relief on the ground that the recently-decided Ninth Circuit case of Glanton v. Advance PCS Inc., 465 F.3d 1123 (9th Cir. 2006), was dispositive as to whether Plaintiff has standing to maintain this action. The Court denied the motion. See Memorandum and Order, March 26, 2007 (Docket no. 80).

1 In the meantime the parties repeatedly continued the settlement conference until it was
2 finally cancelled all together and the case set for trial. During all this time Plaintiff did not
3 engage in any discovery, other than a single Rule 30(b)(6) deposition, until after Defendant
4 filed its motion for summary judgment.

5 All that remains is the claim for injunctive relief. Plaintiff seeks injunctive relief
6 under sections 502(a)(2) and 502(a)(3) of ERISA, and asserts that his intent is to prevent
7 what happened to Mrs. Wells from happening to other Plan Participants. Defendant moves
8 for summary judgment on the ground that Plaintiff does not have evidence sufficient to prove
9 that Defendant is presently acting in violation of ERISA or its implementing regulations.

## DISCUSSION

Section 502 of ERISA provides:

> A civil action may be brought--(2) . . . by a participant . . . for appropriate relief under section 1109 of this title; (3) by a participant . . . (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132(a)(2) & (3). Defendant has offered evidence that its policies and procedures comply with ERISA and its regulations. Declaration of Lorie Merrill. In other words, Defendant argues that summary judgment must be granted in its favor because Plaintiff does not have any evidence that Defendant is engaging in an act or practice that violates ERISA.

Plaintiff responds that Defendant has two systematic problems in its procedures for handling pre-authorizations for urgent care. First, that Defendant does not have "a policy in place to require its employees routinely to consult and to consider the computerized information in [Defendant's] claims and preauthorization databases in order to verify the participant's medical condition and the treatment regimens and protocols members of [Defendant] medical staff have previously approved for the treatment of such medical conditions." Opposition at 2. Second, when Defendant becomes aware that plan participants whose condition subjects them to "pain," to "loss of life," or to "loss of bodily function," it does not "identify or 'flag' such participants in Defendant's information databases. Thus

4

these plan participants are not immediately identified as qualifying for 'urgent care' (72 hours) claim and grievance handling under . . . ERISA Regulations rather than ordinary time limits (30 days)." Id.

Plaintiff's opposition is insufficient to defeat summary judgment. As to the first request for injunctive relief, plaintiff offers no evidence that Defendant's policies do not presently require its employees to review all pertinent database information when administering a request for expedited review. To the contrary, Defendant has offered evidence that it policies do require its employees to review information in its databases. Supplemental Declaration of Lorie Merrill, ¶¶ 13-16. Moreover, plaintiff has also failed to offer evidence that suggests that it was Defendant's failure to review database information about Plaintiff's past treatments that led to the delay in authorizing her treatment. Again, Defendant has offered evidence that the decisionmakers were aware of Plaintiff's wife's treatment history and that they asked Plaintiff to provide his wife's current medical records because Defendant's database did not contain information about her current medical status.

In sum, no reasonable trier of fact could find that Defendant is currently violating ERISA, or is likely to violate ERISA in the future, by failing to direct its employees to review information about a patient in Defendant's databases before processing a request for authorization or an appeal of a denial of the same. ERISA does not require a plan to review every piece of information about a beneficiary in the plan's file before the plan acts upon some request, and, in any, event, Defendant's policies require its employees to review relevant information in the databases. Plaintiff has failed to create a record upon which this Court could justify the injunction Plaintiff seeks.

Plaintiff's second claim for injunctive relief arises from the requirement that "in the case of a claim involving urgent care," the plan shall notify the claimant of a benefit determination on review within 72 hours. 29 C.F.R. § 2560.503-1(i)(2)(i). A "claim involving urgent care" is "any claim for medical care or treatment with respect to which the application of the time periods for making non-urgent care determinations--(A) Could seriously jeopardize the life or health of the claimant or the ability of the claimant to regain

maximum function, or, (B) In the opinion of a physician with knowledge of the claimant's medical condition, would subject the claimant to severe pain that cannot be adequately managed without the care or treatment that is the subject of the claim." 29 C.F.R. § 2560.500-1(2)(m)(1)(i).  Plaintiff, however, has failed to identify any ERISA provision or regulation that requires a plan to "flag" members in its databases when the plan becomes aware that the member has a condition that could qualify the patient for expedited review; in other words, he has failed to identify an ERISA violation upon which such an injunction could be predicated.  There is no requirement that a plan treat every appeal by a patient with an urgent care problem as a 72-hour urgent care claim regardless of the nature of the claim.  Moreover, the issue with the administration of the claim for Plaintiff's wife was not that the decisionmakers were unaware of her condition; rather, it was a dispute as to whether that condition qualified as an urgent care appeal requiring resolution within 72 hours.  Plaintiff may be correct that Defendant should have responded to the appeal within 72 hours, but the injunction he proposes does nothing to remedy that problem and, in any event, there is no evidence that suggests that the delay was the result of a systematic defect that is still in existence today, more than five years later.

## CONCLUSION

The issue on Defendant's motion is not whether Defendant should have handled Plaintiff's wife's request for treatment differently; the question is whether Plaintiff has produced evidence sufficient to show that Defendant is today still violating ERISA or is likely to violate ERISA and that the injunctive relief he proposes addresses that violation.  For the reasons explained above, the limited evidence produced by Plaintiff does not entitle him to injunctive relief as a matter of law.  Accordingly, Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: April 23, 2008

CHARLES R. BREYER

G:\CRBALL\2005\1229\Order re Summary Judgment2wpd.wpd

1 UNITED STATES DISTRICT JUDGE